UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――X
:
CHRISTIAN RIVERA                               :
:
          Plaintiff,                     :      01 Civ. 10593 (SCR)
:
    -against-                            :
:
CITY OF YONKERS, ROBERT DEVITT,                :      **MEMORANDUM DECISION**
individually and officially, as a police officer and  :      **AND ORDER**
employee of the CITY OF YONKERS, and           :
ROBERT SANTOBELLO, individually and            :
officially, as a police officer and employee of the  :
CITY of YONKERS,                               :
:
          Defendants.                   :
―――――――――――――――――――――――――――X

STEPHEN C. ROBINSON, U.S. District Judge:

## I.    Background

### A.    Procedural History

Christian Rivera (the "Plaintiff") filed this lawsuit against Police Officer Robert Devitt ("Devitt"), Police Officer Robert Santobello ("Santobello"), and the City of Yonkers (the "City"; collectively the "Defendants") claiming that he was assaulted and falsely detained and arrested by Devitt and Santobello on the night of November 24, 2000. Plaintiff further claims that the City failed to train and supervise its police officers in the appropriate use of force, and has failed to discipline and sanction those officers who used excessive force on prior occasions. According to Plaintiff, the collective actions of all Defendants violated 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. In addition, Plaintiff maintains that the Defendants' actions give rise to claims under New York State law for assault

and battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and prima facie tort.

Defendants made a motion for summary judgment on four grounds: (1) Plaintiff has not set forth sufficient evidence to demonstrate that the force used by Devitt and Santobello was excessive, and in any event, the officers are protected by qualified immunity in the course of carrying out their official duties; (2) Plaintiff cannot sustain a claim for unlawful arrest or malicious prosecution because he pled guilty to a crime based on the activity for which he was allegedly detailed and prosecuted unlawfully; (3) Plaintiff has not shown that the City had a custom or policy of failing to train, supervise, or discipline officers regarding use of force; and (4) Plaintiff fails to allege sufficient facts to support his state law claims of infliction of emotional distress and prima facie tort.

For the reasons discussed below, Defendants' motion for summary judgment is granted.

**B.    Facts**

On November 24, 2000, Plaintiff and his sister, Betsy Rivera ("Rivera"), were passengers in a blue Ford Escort driven by Glen D'Ambrosio ("D'Ambrosio"), Plaintiff's brother-in-law and Ms. Rivera's husband. Def. R. 56.1 Statement at ¶1. At approximately 7:24 p.m. that evening, Devitt heard another officer's call to the police dispatcher indicating that a blue Ford Escort had been involved in a hit and run accident, and that officers were tracking the movement of the vehicle. Devitt Tr. at 15-17. Upon hearing this radio transmission, Devitt and his partner, Officer Thomas Ward ("Ward"), joined other police vehicles in a high-speed pursuit of the Ford Escort through the streets of Yonkers. During this chase, D'Ambrosio ignored the lights and siren from Devitt's and other police vehicles, collided with a series of other cars, and forced

pedestrians and police officers to dive out of his erratic path. Devitt Tr. at 20-46. The pursuit ended when Devitt and Ward pulled in front of the Ford Escort while other police vehicles came up behind the car; the Ford Escort spun out, collided with the curb, and came to a stop. Devitt Tr. at 47-48; Santobello Tr. at 13. Santobello observed the end of the chase, and was present at the scene when the Ford Escort came to a stop in close proximity to Devitt's vehicle. Santobello Tr. at 13-14.

The parties' accounts of what happened next are in dispute. According to Plaintiff's sister, while Plaintiff was sleeping in the front seat of the Ford Escort, two officers grabbed his shirt and took him out of the car. B. Rivera Tr. at 20-21. Once he was out of the car, Plaintiff tried to push Devitt and threw a punch at him, and subsequently, police officers "broke [Plaintiff's] jaw, I mean, beat him." B. Rivera Tr. at 21. Ms. Rivera also testified, however, that she does not really remember how Plaintiff sustained his injuries, and that she "didn't really see much" of what happened because officers had placed her into a police vehicle. B. Rivera Tr. at 18. Further, when asked if she saw where the officers beat Plaintiff, Ms. Rivera responded: "I see flashes in my head. It's like not really there, but they're there." B. Rivera Tr. at 19.

According to Devitt's testimony, the Plaintiff exited the Ford Escort under his own power immediately after the vehicle came to a stop.[1] Devitt Tr. at 48, 51. Once out of the car, Plaintiff was flailing his arms and taking swings at Devitt; Devitt responded by striking Plaintiff with a single hard punch to Plaintiff's jaw. Devitt Tr. at 54-55; Santobello Tr. at 53-54. After being struck by Devitt, Plaintiff staggered and Devitt placed him in a headlock. Devitt Tr. at 55. Santobello attempted to assist Devitt in restraining Plaintiff and in the process, the three men fell

---

[1] While Santobello was also present at this point and was also deposed by Plaintiff in this case, he did not witness Plaintiff leave the car under his own power (as Devitt testified), nor did he witness Plaintiff being removed from the car by two police officers (as B. Rivera testified). Santobello Tr. at 24, 40-41, 51. The Plaintiff testified that he did not remember anything that happened from a point during the car chase until he woke up in Westchester Medical Center. C. Rivera Tr. at 31-32.

3

to the ground and landed on a concrete curb, where the Plaintiff was ultimately handcuffed. Def. R. 56.1 Statement at ¶14. At that time, Plaintiff was bleeding from the mouth and nose area. Devitt Tr. at 71-72. Plaintiff was treated at Westchester Medical Center for a nasal fracture and a fractured jaw that required surgical repair; he also had to have several teeth removed. See Pl. Ex. 6. Devitt was treated at St. John's Hospital for pain in his hand and lower back, Devitt Tr. at 81-83, and Santobello received treatment at St. John's Hospital for a sprained finger, minor hand abrasions, and lower back pain. Santobello Tr. at 95-96.

Plaintiff was arrested that evening and charged with various crimes, including assault on a police officer, resisting arrest, and obstruction of governmental administration. Def. R. 56.1 Statement at ¶11. On May 6, 2002, he pled guilty to obstruction of governmental administration in the second degree in full satisfaction of the charges. Def. R. 56.1 Statement at ¶12.

## II.   Analysis

### A.   Standard of review

Under Federal Rule of Civil Procedure 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is "material" when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor. See Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). Rather than asking if "the evidence unmistakably favors one side or the other," a court must ask whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252. If so, the court may not grant a defendant's motion for summary judgment. Assessing the credibility of witnesses and choosing between conflicting versions of events are roles for the fact-finder, not for the court on summary judgment. See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

The non-moving party, however, must present sufficient evidence such that a jury could reasonably find in its favor – "the mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough. Anderson, 477 U.S. at 252. "The non-moving party may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

### B.      Federal Claim for Excessive Force

Plaintiff's first cause of action alleges that the actions of Defendants Devitt and Santobello on the evening of November 24, 2000 constituted an unreasonable use of force in violation of that deprived Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.

#### i.      Violation of a Constitutional Right

A claim that law enforcement officers used excessive force in the course of an arrest must analyzed under the Fourth Amendment "reasonableness" standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). The factfinder must examine the totality of the circumstances faced by the

arresting officer to determine whether the amount of force used was objectively reasonable at the time.  See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004).  It is necessary to consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  Federal courts have clearly established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id.

      The evidence presented here indicates that Defendants' actions were within the bounds of appropriate police responses, and were therefore reasonable.  Following an extended pursuit of a vehicle that was driving erratically and endangering the safety of civilians and police officers, Plaintiff, once outside of the Ford Escort, was flailing his arms and taking swings at Devitt.  Plaintiff's principal witness, Betsy Rivera, acknowledges that Plaintiff tried to push Devitt and threw a punch at him.  Devitt responded with a single punch to Plaintiff's jaw, and Devitt and Santobello engaged in a physical struggle with Plaintiff in an effort to subdue him.  Taking these facts in a light most favorable to the Plaintiff, this Court cannot conclude that the officers' actions were unreasonable.

      While Plaintiff's injuries were significant, the injuries themselves, without more, are not enough for any reasonable factfinder to conclude that the officers used excessive force.  Plaintiff himself offers no alternative to the Defendants' version of events, and Plaintiff's sister's deposition testimony suggests that she did not actually observe the interaction between Devitt, Santobello and Plaintiff beyond the point when the Plaintiff threw a punch at the police officer, and did not remember how Plaintiff sustained his injuries.  Plaintiff has failed to offer any

evidence to support a finding that there is a material fact in dispute with respect to his claim for unreasonable force. Defendants' motion for summary judgment as to the first cause of action in the Complaint is therefore granted.

### ii. Qualified Immunity

Because this Court has concluded that Plaintiff has not established that Defendants' actions violated a constitutional right, it is not necessary to address Defendants' alternative defense of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (U.S. 2001).

### C. Federal Claims for False Imprisonment / Arrest and Malicious Prosecution

Plaintiff's second cause of action alleges that Plaintiff was unlawfully detained by Defendants, and his fourth cause of action states that the individual Defendants maliciously and without reason or probable cause filed false charges against Plaintiff in Yonkers City Court.

To prove the elements of false arrest or false imprisonment, a plaintiff must show: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). A finding that police officers had probable cause to make an arrest is a complete defense to an action for false arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Further, if an individual is convicted of the crime for which he was arrested, that conviction is a defense to an action asserting that the arrest was made without probable cause. See Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986). This principle applies equally when the individual is convicted upon a guilty plea. See, e.g., Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999); Roundtree v. City of New York, 778 F. Supp. 614, 619 (E.D.N.Y. 1991). Accordingly, a plaintiff cannot recover on a claim for false

arrest if he was convicted of the offense for which he was arrested and that conviction has not been overturned in any fashion.  See Cameron, 806 F.2d at 387.

To establish a claim for malicious prosecution, a plaintiff must show: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.  Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). A necessary component of a malicious prosecution action, therefore, is the termination of the prior criminal proceeding in favor of the accused.  See Heck v. Humphrey, 512 U.S. 477, 484 (1994).  Clearly, a conviction for a crime cannot be considered a termination in favor of the accused, unless, for example, that conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.  Cf. Heck, 512 U.S. at 486-87 (describing situations that render a conviction invalid).  It is well settled that a guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim.  See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir. 1999) (internal quotation marks and citation omitted).

Here, on May 6, 2002, Plaintiff voluntarily entered a guilty plea to obstruction of governmental administration, one of the charges for which he was arrested on November 24, 2000.  Plaintiff presents no evidence to suggest that this conviction has been invalidated in any way (indeed, Plaintiff does not make any argument whatsoever in support of the claims for false arrest and malicious prosecution).  Because Plaintiff pled guilty to one of the crimes for which he was arrested on November 24, 2000, Defendants have a complete defense to Plaintiff's claim for false arrest.  In addition, as this guilty plea represents a termination of the case that was not in favor of the accused, Plaintiff cannot maintain his claim for malicious prosecution.  Defendants'

motion for summary judgment as to the second and fourth causes of action in the Complaint is therefore granted.

### D. <u>Monell</u> Claim for Failure to Train, Failure to Supervise, Failure to Discipline

Plaintiff's third cause of action alleges that Defendants' conduct resulted from one or more policies or customs of the City whereby the City failed to train police officers in the use of force, failed to properly supervise officers in the use of force, and failed to discipline and re-train officers who engaged in prior acts of excessive force.

Municipalities may be held liable under 42 U.S.C. § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  See <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91, 694 (1978); <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998). To set forth a cognizable claim for municipal liability in such an action, a plaintiff must plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983).  While a plaintiff need not "show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  <u>DeCarlo</u>, 141 F.3d at 61 (internal citations omitted).

Plaintiff here offers no facts or evidence whatsoever in support of the brief allegation listed in the Complaint regarding various municipal policies and customs.  Indeed, neither Plaintiff's Rule 56.1 Statement nor his Memorandum of Law nor any of his supporting exhibits makes reference to any evidence in support of these <u>Monell</u> claims.  Defendants' motion for summary judgment on this claim is therefore granted.

### E.  Exercise of Supplemental Jurisdiction over State Law Claims

As set forth above, this Court has granted summary judgment for Defendants on each of Plaintiff's four federal causes of action. Accordingly, this Court declines to assert supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."); Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006).

### III.  Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED, and all of Plaintiff's federal causes of action are DISMISSED. Further, this court declines to assert supplemental jurisdiction over the remaining state law claims in this lawsuit. Accordingly, there are no remaining claims pending before this court. The Clerk of the Court is hereby directed to close this case.

IT IS SO ORDERED.

Dated: January 18, 2007

White Plains, New York

Stephen C. Robinson
United States District Judge